FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JAN 10 2007
JAMES W. McCORMACK, CLERK
By: DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHELTER MUTUAL INSURANCE COMPANY PLAINTIFF

V. No. 4:07-CV00000022 WRW

LAURIE TODD, individually and as Parent and next friend of DANIELLE LINBOM, a minor; JAMES TODD, an Individual; DANNY L. HAYES and BARBARA J. HAYES DEFENDANTS

This case assigned to District Judge Wilson
and to Magistrate Judge Deere

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes Plaintiff, Shelter Mutual Insurance Company, by and through its attorneys, Huckabay, Munson, Rowlett & Moore, P.A., and for its Complaint for Declaratory Judgment, states:

### I. Jurisdiction and Venue

1. The instant lawsuit arises out of a contract of insurance issued and delivered to Danny Hayes and Barbara Hayes by the Plaintiff, Shelter Mutual Insurance Company. The suit arises out of a claim being made by Laurie Todd, individually and as parent and next friend of Danielle Lindbom, a minor, and James Todd, against Mr. and Mrs. Hayes. Shelter seeks a determination of its rights and obligations to defend and/or indemnify the Hayeses for the claims being asserted by the Todds.

2. Shelter is a non-resident corporation authorized to do business and doing business in the State of Arkansas.

3. Defendants Danny Hayes and Barbara Hayes are, upon information and belief, residents of Searcy, White County, Arkansas.

4. Plaintiffs Laurie Todd and James Todd are, upon information and belief, residents of Searcy, White County, Arkansas.

5. Jurisdiction is proper with this Court pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00 and complete diversity of citizenship exists between the Plaintiff and all Defendants.

6. Venue is proper with this Court pursuant to 28 U.S.C. § 1391(a) in that all Defendants reside in the same state and one or more of the Defendants reside within this judicial district.

## II. Factual Background

7. Shelter issued a policy of commercial general liability insurance to Danny and Barbara Hayeses styled Policy Number 03-31-002287699-001. A certified copy of the policy issued to the Hayes is attached to this Complaint for Declaratory Judgment as Exhibit A.

8. The policy at issue was in full force and effect from March 14, 2006, through October 6, 2006. The policy contains, within it, the following relevant provisions:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuance, change or resumption of such "bodily injury" or "property

damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee authorized by you to give or receive notice of an "occurrence" or claim, includes any continuance, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. Exclusions

This insurance does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does

not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions

This insurance does not apply to:

a. Knowing Violation of Rights of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

* * *

SECTION V – DEFINITIONS

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purpose of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

* * *

9. As a result of the coverage issued by Shelter, Danny Hayes and Barbara Hayes have sought insurance coverage for a lawsuit filed against them by Laurie Todd, individually and as parent and next friend of Danielle Lindbom, a minor, and James Todd. A copy of the Complaint, which was filed in the United States District Court for the Eastern District of Arkansas, Western Division, is attached to this Complaint for Declaratory Judgment as Exhibit B.

10. In the lawsuit they filed against the Hayeses, the Todds allege that they attempted to rent a home located in Searcy, White County, Arkansas, from the Hayes. (Exhibit B at p. 3.) The Todds allege that, on August 26, 2006, they viewed the home owned by the Hayeses at which time they were advised of a "no pet"

policy. According to the Todds' Complaint, while they were allowed to view the home, they were not offered a rental application and were later informed that they would not be allowed to rent the house at issue on the basis of the Hayeses' "no pet" policy. (Exhibit B at p. 3.)

11. According to the Todds, while they do own a dog, a black Labrador retriever, the Labrador is a professionally trained service animal, rather than a pet. (Exhibit B at p. 2.) According to the Todds, their minor daughter, Danielle Lindbom, suffers from autism, pervasive developmental disorder, mental retardation, seizure disorder and Williams Syndrome. (Exhibit B at p. 2.) As a result of these disabilities, the Todds allege that their daughter poses a significant risk of harm to herself as she has frequent seizures, does not behave appropriately in social settings and is a flight risk. (Exhibit B at p. 2.) Their daughter uses the professionally trained Labrador as a service animal which alerts them to oncoming and impending seizures, alerts them to Danielle taking flight without supervision, tracks their daughter in the event she takes flight, and otherwise protects her from harm. (Exhibit B at p. 2.)

12. The Todds allege that, following their initial contact with the Hayeses, on September 12, 2006, Laurie Todd again contacted Defendant Barbara Hayes seeking to rent the property at issue, at which time she attempted to explain her daughter's disability and applicable laws precluding discrimination against individuals with such disabilities. According to the Todds, separate Defendant Barbara Hayes continued to refuse to rent her the house on the basis of her "no pet"

policy although she admitted that she had seen interviews with the Todds in local media and was aware of applicable laws.

13. In the Complaint filed against the Hayeses, the Todds allege the Hayeses' conduct constitutes a violation of the Fair Housing Amendments Act, codified at 42 U.S.C. § 3604, *et seq.* According to the Todds, this statute provides that it is unlawful to discriminate in the sale or rental, or to otherwise make unavailable, a dwelling to any buyer or renter because of a disability of that buyer or renter, a person residing or intending to reside in that dwelling after it is sold, rented or made available. According to the Todds, discrimination is defined under the Fair Housing Amendments Act as including a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a renter equal opportunity to enjoy a dwelling. The Todds allege that, based upon their daughter's mental and physical conditions, the Hayeses violated the Fair Housing Amendments Act by refusing to rent a dwelling to the Todds and otherwise make reasonable accommodations for their daughter's disability. As a result of the Hayeses' refusal, the Todds seek injunctive relief, compensatory and punitive damages, attorney's fees, costs, and other expenses of suit.

**III. Request for Declaratory Judgment**

14. The policy issued to the Hayeses provides that Shelter has a duty to defend or indemnify them for suit seeking damages arising from "bodily injury" or "property damage" caused by an "occurrence." In the instant case, it is Shelter's

belief that neither "bodily injury" nor "property damage" as those terms are defined exists. Moreover, it is Shelter's belief that there has been no "occurrence" as that term is defined under the policy.

15. It is Shelter's belief that, to the extent that the Court may find that either "bodily injury" or "property damage" occurred, which it did not, that such injury or damage was expected or intended from the standpoint of the insureds.

16. The policy issued by Shelter to the Hayeses also includes "personal and advertising injury" liability coverage. Under its insuring agreement, Shelter agrees to defend and indemnify the Hayeses against any suit seeking damages because of "personal and advertising injury." It is Shelter's belief that the damages sought by the Todds do not arise from "personal and advertising injury" as that term is defined under the coverage issued to the Hayeses.

17. It is Shelter's belief that, to the extent that "personal and advertising injury" is deemed by the Court to have occurred, which it did not, such injury occurred by or at the direction of the Hayeses with knowledge that their acts would violate the rights of another and would inflict personal and advertising injury.

18. Based upon the foregoing provisions in the policy issued by Shelter to the Hayeses, it is Shelter's belief that it has neither a duty to defend nor indemnify the Hayeses for any of the claims made against them by the Todds.

19. Shelter requests this Court enter a declaratory judgment finding that it has no duty to defend or indemnify the Hayeses in connection with the suit filed by the Todds.

WHEREFORE, Shelter Mutual Insurance Company respectfully requests this Court enter a declaratory judgment finding that it has no duty to defend or indemnify Danny and/or Barbara Hayes in the lawsuit filed against them by Laurie Todd, individually and as parent and next friend of Danielle Lindbom, a minor, and James Todd, currently pending in the United States District Court for the Eastern District of Arkansas, Western Division, Case No. 4-06-CV-01507G, and that it be given any and all other relief to which it is entitled.

Respectfully submitted,

HUCKABAY, MUNSON, ROWLETT & MOORE, P.A.
1900 Regions Building
400 West Capitol Avenue
Little Rock, Arkansas 72201
Ph. (501) 374-6535 /Fax (501) 374-5906

SHANE STRABALA, AR BIN 2000080
JOHN E. MOORE




**SHELTER INSURANCE COMPANIES**

**SHELTER MUTUAL**
**SHELTER GENERAL**
**SHELTER LIFE**

**CLAIM NUMBER: 03-31-2287699-1**

**WE HEREBY CERTIFY THAT THIS IS A TRUE AND COMPLETE COPY OF THE ORIGINAL INSURANCE POLICY AS OF AUGUST 26, 2006.**

**SHELTER MUTUAL INSURANCE COMPANY**

**BY** Mike Hunt ______________________

**dda**



THIS POLICY ISSUED BY:
SHELTER MUTUAL INSURANCE CO.



SHELTER INSURANCE COMPANIES

GENERAL LIABILITY POLICY
DECLARATIONS

AGENT:
DEBRA KAY LIKERT LUTCF
III E CENTER ST
SEARCY, AR 72I43
501-26B-4636

03-0C555-02

NAME AND AOORESS OF INSURED:

REISSUE OF
POLICY NUMBER 03-3I-002287699-000I

ATTACH THIS TO THE POLICY SHOWN ABOVE
REPLACING DECLARATIONS ON THAT POLICY

DANNY AND BARBARA HAYES
114 N VALLEY RD
SEARCY AR 72143-9600

POLICY PERIOD: FROM 01:56 P.M. MARCH 14, 2006 TO OCTOBER 6, 2006 AT 12:0I A.M. STANDARD TIME AT THE LOCATION OF THE PROPERTY DESCRIBED; AND SUBJECT TO CONSENT OF THE COMPANY FOR TERMS OF SUCH DURATION EACH THEREAFTER AS THE REQUIRED RENEWAL PREMIUM IS PAID BY THE INSURED AND RECEIVED BY THE COMPANY ON OR BEFORE EXPIRATION OF THE CURRENT TERM.

LOCATION OF THE PREMISES COVERED IS:
DEFINED POLICY TERRITORY OR SEE BELOW

BUSINESS OF THE NAMEO INSURED IS: DWELLINGS

THE NAMED INSURED IS: INDIVIDUAL
AUDIT PERIOD: N/A

SUBJECT TO THE TERMS OF THIS POLICY, THE COMPANY'S LIMITS OF LIABILITY FOR THE COVERAGES PROVIDED UNDER THIS POLICY ARE AS FOLLOWS:

| LIMITS OF INSURANCE | |
|---|---|
| GENERAL AGGREGATE (OTHER THAN PRODUCTS - COMPLETED OPERATIONS) | $ 200,000 |
| PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT (SEE EACH CLASSIFICATION BELOW) | INCLUDED |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ 1D0,000 |
| EACH OCCURRENCE LIMIT | $ 100,000 |
| FIRE DAMAGE LIMIT | $ 100,000 ANY ONE FIRE |
| MEDICAL EXPENSE LIMIT | $ 5,000 ANY ONE PERSON |

THE INSURANCE APPLIES ONLY WITH RESPECT TO THE FOLLOWING COVERAGE (S) AND THE HAZARD(S) SHOWN

| COVERAGE FORM AND DESCRIPTION OF HAZARDS | | PREMIUM BASES | RATES | ADVANCE PREMIUM |
|---|---|---|---|---|
| CG-00-01 COMPREHENSIVE GENERAL LIABILITY | | | (ANNUAL) | |
| PREMISES & OPERATIONS- | | | | |
| 63010 DWELLINGS - ONE FAMILY (LESSORS RISK ONLY) | | EACH | 18.332 | I2B.00 |
| INCLUDING PRODUCTS &/OR COMPLETED OPERATIONS | | 7 | | |
| 121 AUTUMN COVE | SEARCY AR | | | |
| 93 LELIA LN | SEARCY AR | | | |
| 308 AUDLEY BOLTON | SEARCY AR | | | |
| 2216 JONATHAN LN | SEARCY AR | | | |
| 302 AUDLEY BOLTON | SEARCY AR | | | |
| 23I3 AUDLEY BOLTON | SEARCY AR | | | |
| 4 REBECCA LN | SEARCY AR | | | |

COVERAGE PARTS AND ENDORSEMENTS ATTACHED TO AND FORMING PART OF THIS POLICY

CG-00-01 (12-2004) COMMERCTAL GENERAL LIABILITY COVERAGE FORM
CG-21-60 (09-1998) EXCLUSIDN - YEAR 2000 COMPUTER-RELATED & ELECTRONIC PROBLEMS
1L-02-3I (07-2002) ARKANSAS CHANGES - CANCELLATION
IL-00-I7 (11-199B) COMMON POLICY CONDITIONS

***SEE CONTINUATION PAGE***

A POLICY CONSISTS OF THIS DECLARATION, COMMON POLICY CONOITIONS AND ONE OR MORE COVERAGE FORMS. A COVERAGE PART CONSISTS OF A COVERAGE FORM AND APPLICABLE ENDORSEMENTS.

TRANSACTION: PC LS
H. O. CODE: 128.00
POLICY TERM: ONE YEAR

COVERAGE FOR ACTS OF TERRORISM IS INCLUDED IN YOUR POLICY AT NO CHARGE. 90% OF ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM AND PAID BY SHELTER WOULD BE REIMBURSED BY THE UNITED STATES.

DATE ISSUED: 03-22-2006
'01092006'
J

COUNTERSIGNED BY [signature]
G-2.8-G



SHELTER INSURANCE COMPANIES

DECLARATIONS--CONTINUATION PAGE--POLICY NUMBER 03-31-002287699-0001 AGENT: 03-0C555-02
INSURED: HAYES, DANNY AND BARBARA ISSUE DATE: 03-22-2006

| | | |
|---|---|---|
| CG-31-31 | (12-2004) | FUNGI OR BACTERIA EXCLUSION |
| CG-21-67 | (12-2004) | FUNGI OR BACTERIA EXCLUSION |
| CG 00 67 | (03-2005) | VIOLATION OF STATUTES THAT GOVERN SENDING INFORM |
| IL-01-99 | (07-2002) | ARKANSAS CHANGES - TRANSFER RIGHTS OF RECOVERY |
| CG-26-44 | (12-2004) | ARKANSAS CHANGES - NON-BINDING ARBITRATION |
| CG-21-47 | (07-1998) | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| B-601-B | | LEAD POISONING EXCLUSION ENDORSEMENT |
| B-559-B | | ASBESTOS EXCLUSION |



1817 WEST BROADWAY • COLUMBIA, MISSOURI 65218-0001 • (573)445-8441

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:


© ISO Properties, Inc., 2003
(Continued on Next Page)

as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire",

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".


© ISO Properties, Inc., 2003
(Continued on Next Page)

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

 © ISO Properties, Inc., 2003 (Continued on Next Page)

others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings

 © ISO Properties, Inc., 2003 (Continued on Next Page)

trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations

 © ISO Properties, Inc., 2003 (Continued on Next Page)

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the


© ISO Properties, Inc., 2003
(Continued on Next Page)

known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily

 © ISO Properties, Inc., 2003 (Continued on Next Page)

condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.


© ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# EXCLUSION - YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

**(1)** Any of the following, whether belonging to any insured or to others:

**(a)** Computer hardware, including microprocessors;

**(b)** Computer application software;

**(c)** Computer operating systems and related software;

**(d)** Computer networks;

**(e)** Microprocessors (computer chips) not part of any computer system; or

**(f)** Any other computerized or electronic equipment or components; or

**(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement


Copyright, Insurance Services Office, Inc., 1998

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph 5. of the **Cancellation** Common Policy Condition is replaced by the following:

**5. a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** We will refund the pro rata unearned premium if the policy is:

**(1)** Cancelled by us or at our request;

**(2)** Cancelled but rewritten with us or in our company group;

**(3)** Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

**(4)** Cancelled after the first year of a prepaid policy that was written for a term of more than one year.

**c.** If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in **b.(2), (3)** or **(4)** above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

**d.** The cancellation will be effective even if we have not made or offered a refund.

**e.** If the first Named Insured cancels the policy, we will retain no less than $100 of the premium, subject to the following:

**(1)** We will retain no less than $250 of the premium for the Boiler And Machinery Coverage Part.

**(2)** We will retain the premium developed for any annual policy period for the General Liability Classifications, if any, shown in the Declarations.

**(3)** If the Commercial Auto Coverage Part covers only snowmobiles or golfmobiles, we will retain $100 or the premium shown in the Declarations, whichever is greater.

**(4)** If the Commercial Auto Coverage Part covers an "auto" with a mounted amusement device, we will retain the premium shown in the Declarations for the amusement device and not less than $100 for the auto to which it is attached.


© ISO Properties, Inc., 2001
(Continued on Next Page)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I — Coverages — Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.


© ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.


© ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate

**a.** The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003 including any amendment of or addition to such law; or

**c.** Any statute ordinance or regulation other than the TCPA or CAN-SPAM Act of 2003 that prohibits or limits the sending transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute ordinance or regulation other than the TCPA or CAN-SPAM Act of 2003 that prohibits or limits the sending transmitting, communicating or distribution of material or information.



© ISO Properties, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES - TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM LIABILITY COVERAGE FORM
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

We will be entitled to recovery only after the insured ("insured") has been fully compensated for the loss or damage sustained, including expenses incurred in obtaining full compensation for the loss or damage.



© ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ARKANSAS CHANGES — NON-BINDING ARBITRATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTION LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If we and the insured do not agree whether coverage is provided under this Coverage Part or Policy for a claim made against the insured, both parties may, by mutual consent, agree in writing to arbitration of the disagreement.

If both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, both parties must request that selection be made by a judge of a court having jurisdiction. Each party will:

1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county or parish in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. Any decision agreed to by the arbitrators may be appealed to a court of competent jurisdiction.


© ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.


Copyright, Insurance Services Office, Inc., 1997

## LEAD POISONING EXCLUSION ENDORSEMENT

It is understood and agreed that such insurance as is afforded by this policy does not apply to:

(1) **Bodily injury** or **property damage** arising out of or caused by, in whole or in part, lead, paint containing lead, or any other material or substance containing lead;

(2) Any legal obligation of yours for indemnification or contribution due to damages because of **bodily injury** or **property damage** arising out of or caused by, in whole or in part, lead, paint containing lead, or any other substance or material containing lead;

(3) Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, cleanup, remove, abate, contain, treat or neutralize lead, paint containing lead, or any other substance or material containing lead.

## ASBESTOS EXCLUSION

It is understood and agreed that such insurance as is afforded by this policy does not apply to any and all liability for bodily injury, disease, or illness, including death at any time resulting therefrom, or property damage, for past, present or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, abatement, replacement or handling of, or exposure to asbestos or products containing asbestos whether or not the asbestos is or was at any time airborne as a fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion, or found in any form whatsoever.

It is further understood and agreed that this policy will not become excess of any reduced or exhausted underlying aggregate limit of liability or aggregate self-insured retention to the extent such reduction or exhaustion is the result of claims, damage or loss excluded by this endorsement.

It is also agreed that the company shall not be obligated to defend any suit or claim as a result of claims, damage or loss excluded by this endorsement.

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
OCT 12 2006
JAMES W. McCORMACK, CLERK
By: ______ DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LAURIE TODD, indivic ually and as parent and next friend of DANIELLE LINDBOM a minor; JAMES TODD, an indiv dual,

Plaintiffs,

V.

CASE NUMBER: 4-06-CV-01507 G

DANNY L. HAYES and BARBARA J. HAYES,

Defendants.

This case assigned to District Judge Eisele
and to Magistrate Judge Cavaneau

**COMPLAINT**

COME NOW Plaintiffs, Laurie Todd, individually and as parent and next friend of Danielle Todd, a minor, and James Todd, individually, by and through the undersigned attorney, and hereby sue the Defendants, Danny L. Hayes and Barbara J. Hayes, for declaratory and injunctive relief, as well as for compensatory and punitive damages pursuant to 42 U.S.C. § 3601, *et. seq.* ("The Fair Housing Amendments Act of 1988" or "FHAA") and allege:

**JURISDICTION AND PARTIES**

1. This is an action for damages, declaratory and injunctive relief pursuant to the Fair Housing Amendments Act (42 U.S.C. § 3601, et. seq.). This Court has original jurisdiction under 28 U.S.C. 1331 and 1343.

2. Venue is proper in this Court, the Eastern District of Arkansas, pursuant to 28 U.S.C. §1391(B).





3. Plaintiff Laurie Todd (hereinafter referred to as "Ms. Todd") is over the age of majority and is a resident of the State of Arkansas. Ms. Todd is the natural mother of Plaintiff Danielle Lindbom, a minor.

4. Plaintiff Danielle Lindbom (hereinafter referred to as "Danielle") is a minor (currently 14 years of age) who resides in the State of Arkansas. Danielle suffers from what constitutes a handicap or qualified "disability"[1] under the Fair Housing Amendments Act ("FHAA") and all other applicable Federal statutes and regulations to the extent that she suffers from autism, pervasive developmental disorder, mental retardation, seizure disorder and Williams Syndrome. As a result of these disabilities, Danielle poses a significant risk of harm to herself as she has frequent seizures, does not behave appropriately in social settings and is a flight risk. Danielle uses a professionally trained service animal named Callie, a black Labrador retriever, who alerts to oncoming and impending seizures, alerts to Danielle taking flight without supervision, tracks Danielle in the event she takes flight, and otherwise protects Danielle from harm.

5. Plaintiff James Todd is over the age of majority and is a resident of the state of Arkansas and is married to Plaintiff Laurie Todd.

6. The Defendants, Danny L. Hayes and Barbara J. Hayes, (hereinafter referred to as "the Hayes" or "Defendants") are individuals over the age of majority and residents of the State of Arkansas.

7. Defendants are in the business of selling or renting dwellings as defined in 24 CFR § 100.20.

---

[1] This complaint shall use the generally accepted term "disability," utilized in the Americans with Disabilities Act, in lieu of the term "handicap," utilized in the Fair Housing Amendments Act, as the United States Supreme Court has held both terms have the same legal meaning in Bradgon v. Abbot, 524 U.S. 624, 631 (1998).

8. Upon information and belief, Defendants own in excess of 10 rental homes (single family houses) in Arkansas, including the single family house located at 308 Audley Bolton, Searcy Arkansas (hereinafter referred to as the "subject property").

9. All events giving rise to this lawsuit have occurred in the Eastern District of Arkansas, Western Division, in White County, Arkansas.

10. On August 26, 2006, Plaintiffs contacted Defendants about renting the house located at 308 Audley Bolton, Searcy, Arkansas, in response to an advertisement in The Daily Citizen newspaper. Plaintiffs met Defendant Barbara Hayes at the subject property that evening at which time Plaintiffs were advised by said Defendant, upon seeing Danielle's service animal, that there was a "no-pet" policy. Though Defendant Barbara Hayes allowed Plaintiffs to view the interior of the home and Plaintiffs expressed a desire to rent the home, Defendant Barbara Hayes did not offer a rental application to Plaintiffs and advised that she would have to talk with her husband, Defendant Danny Hayes, about whether they would allow the dog.

11. Following their meeting at the subject property, Defendant Barbara Hayes called Plaintiffs to advise that she had spoken with her husband and that the Defendants had decided not to rent the subject property to Plaintiffs on the basis of Defendants' "no-pet" policy, regardless of Danielle's disability and the fact that the dog at issue is not a pet, but is rather a professionally trained service animal.

12. Subsequently, Plaintiffs were interviewed by two newspapers, the Searcy Sun and the Daily Citizen, as well as two local television stations, channels 4 and 11, about the discrimination Plaintiffs often endure as a result of Danielle's disability, their use of a service animal, and difficulties in locating appropriate housing as a result of "no-pet" policies, in

particular. These interviews were published and/or televised in September 2006 and also made mention of the applicable federal laws and regulations making such discrimination illegal.

13. On September 12, 2006, Plaintiff Laurie Todd noticed that the subject property was still available for rent and she called Defendant Barbara Hayes again to seek to rent the subject property and to attempt to explain the applicable laws protecting individuals with disabilities such as Danielle. In the resulting conversation, Defendant Barbara Hayes continued to refuse to rent the house to Plaintiffs on the basis of Defendants' "no-pet" policy, admitted that she had seen the interviews in the local media and was aware of the applicable laws, but continued to maintain that Plaintiffs' service animal, federal law notwithstanding, was a "pet."

**COUNT I – VIOLATION OF THE FAIR HOUSING AMENDMENTS ACT**

14. Plaintiffs re-allege each and every allegation contained in paragraphs one through thirteen, inclusive, as though fully set forth herein.

15. The Fair Housing Amendments Act, as outlined in 42 U.S.C. § 3604, in part, states it shall be unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a disability of that buyer or renter, a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that buyer or renter.

16. Discrimination is defined in 42 U.S.C. § 3604 to include a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a renter equal opportunity to use and enjoy a dwelling.

17. The Defendants are in violation of the applicable provisions of the FHAA and the regulations promulgated thereunder as a result of the following arbitrary, knowing, deliberate, intentional, willful and/or wanton acts or omissions:

a) Denying Plaintiffs the opportunity to participate in, or benefit from, the housing, aid, benefit, or service offered by Defendants;

b) Refusing to rent or otherwise making unavailable or denying a dwelling to Plaintiffs on the basis of Danielle's disability.

c) Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford Plaintiffs equal opportunity to use and enjoy a dwelling

18. Plaintiffs have been obligated to retain undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 3613(c)(2).

19. Pursuant to 42 U.S.C. § 3613(c)(1), this Court is vested with the authority to grant Plaintiffs injunctive relief as well as award both compensatory and punitive damages as a result of Defendants' unlawful discrimination on the basis of disability.

WHEREFORE, the Plaintiffs demand judgment against Defendants and request the following relief:

A. That the Court issue a permanent injunction enjoining Defendants from continuing their discriminatory practices;

B. That the Court award compensatory and punitive damages to Plaintiffs in such amount as determined by the Court to be just and equitable;

C. That the Court award reasonable attorney's fees, costs (including expert fees) and other expenses of suit, to the Plaintiffs; and

D. That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 9th day of October 2006.

Edward I. Zwilling, Esq.
Ala. Bar No. ASB-1564-L54E
Schwartz Zweben & Associates, LLP
300 Office Park Drive
Suite 217
Birmingham, Alabama 35223
Telephone: (205) 871-8089
Facsimile: (205) 871-8091
Email: ezwilling@szalaw.com